UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROCHELLE LYNN KELLY, | ) | Case No. 1:17CV0757 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Rochelle Lynn Kelly ("Kelly" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

## I.  PROCEDURAL HISTORY

On March 8, 2013, Kelly protectively filed an application for a POD and DIB, alleging disability beginning January 8, 2013.  (R. 10, PageID #: 67, 234-235, 244, 257-259, 260-272.)  Kelly's application was denied initially and upon reconsideration.  (R. 10, PageID #: 67, 137-155, 156-174.)  Thereafter, Kelly filed a written request for a hearing before an administrative law judge.  (R. 10, PageID #: 192-193.)  The Administrative Law Judge ("the ALJ") held the hearing on September 2, 2015.  (R. 10, PageID #: 91-136.)  Kelly appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 93, 99-122.)  A vocational expert ("VE") also attended the hearing and provided testimony.  (*Id.* at 93-94, 123-135.)

On November 10, 2015, the ALJ found Kelly was not disabled.  (R. 10, PageID #: 67, 84.)  The Appeals Council denied Kelly's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (R. 10, PageID #: 54-56.)  On April 10, 2017, Kelly filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.  Kelly's briefing alleges the ALJ committed legal error when evaluating her credibility, symptoms, the medical evidence of record and pertinent physician opinions.  (R. 12, PageID #: 1535-1536.)

## II.  PERSONAL BACKGROUND INFORMATION

Kelly was born in April 1964, and was 48 years old on the alleged disability onset date.  (R. 10, PageID #: 82, 99.)  Accordingly, Kelly was considered a younger

2

individual age 45-49 for Social Security purposes.  *See* 20 C.F.R. § 404.1563.  Kelly

has a high school education and is able to communicate in English.  (R. 10, PageID

#: 82, 260, 262.)  Kelly had past relevant work as a general clerk and mail clerk.  (R.

10, PageID #: 82, 124.)


## III.  RELEVANT MEDICAL EVIDENCE[1]

Kelly applied for DIB benefits on March 8, 2013, alleging disability beginning

January 8, 2013.  (R. 10, PageID #: 67, 234-235, 244.)  Kelly listed her physical or

mental conditions that limit her ability to work as:  two brain surgeries, one to

remove a cyst, and a second for fluid leakage; seizure activity; neuropathy –

numbness with uncontrolled muscle spasms; arthritis; lupus; depression and

anxiety; swelling of joints with inflammation; constant neck pain; bone thinning;

carpal tunnel with trigger release; nodular scloritis with blurriness and light

sensitivity; continued sinus congestion and infections; tennis elbow; adult ADD; and

continued headaches.  (R. 10, PageID #: 261.)

In early 2013, Kelly's primary care physician Kimberly Sheets, D.O. referred

her to Marie Kuchynski, M.D., a rheumatologist, because of chronic, diffuse joint

pain in her fingers, hips, knees, and ankles.  (R. 10, PageID #: 591.)  At her

---

[1] The summary of relevant medical evidence is not intended to be exhaustive.  It
includes only those portions of the record cited by the parties and also deemed
relevant by the court to the assignments of error raised.

February 21, 2013, visit to Dr. Kuchynski, Kelly reported back pain, which radiates into her left hip, over the previous week. *Id.* She also reported that she recently had a bilateral carpal tunnel release, and an EMG prior to the surgery showed pinched nerves in her arms and legs. *Id.* Kelly indicated that the carpal tunnel release had helped her arm pain, although she still had left elbow pain. *Id.*

Dr. Kuchynski's initial impression was osteoarthritis, but she ordered lab tests for further evaluation. (R. 10, PageID #: 593.) Although the doctor did not have records to review, she assumed Kelly's report of a positive lab test for "immune deficiency" was "an ANA" (antinuclear antibodies). *Id.* at PageID #: 591, 593. Dr. Kuchynski also noted the presence of "multiple nodules," and noted she will check for "RF" (rheumatoid factors). *Id.* at PageID #: 593.

At a March 22, 2013, visit to neurologist Zach Lewton, M.D., it was noted that Kelly had a longstanding history of depression and headaches. (R. 10, PageID #: 553.) At a follow-up appointment with Dr. Kuchynski, on April 22, 2013, the rheumatologist diagnosed Kelly with SLE (Systemic Lupus Erythematosus), an autoimmune disease, and indicated that Kelly was on immunosuppression (Plaquenil). (R. 10, PageID #: 594.) The doctor also noted multiple orthopedic and radicular symptoms unrelated to SLE. *Id.*

At a later visit to Dr. Lewton, on August 16, 2013, he indicated that neuropsychogical testing showed severe depression and moderate anxiety that affected her memory and concentration. (R. 10, PageID #: 665; *see also* 658-659.)

4

T. Shawn Sullivan, Ph.D., had conducted the neuropsychogical testing.  *Id.* at PageID #: 658-662.  Dr. Sullivan determined that Kelly demonstrated limited intellectual abilities and a range of cognitive impairments that may be due, in large part, to the adverse effects of depression, or in part, to the effects of her medications.  *Id.* at 659.  The test findings were "not consistent with the patterns of cognitive impairment associated with SLE, partial epilepsy, or ADHD-I."  *Id.*

In October 2014, Matthew Paris, Psy.D., treating clinical psychologist, provided a disability update to UNUM, Kelly's long-term disability insurance company.  (R. 10, PageID #: 1354-1357.)  Dr. Paris identified bipolar disorder as the primary diagnosis that may impact Kelly's functional capacity.  *Id.* at 1354.  He included a secondary diagnosis of generalized anxiety disorder, and attention deficit disorder.  *Id.*  Dr. Paris noted symptoms of depression, fatigue, mood swings, attention and concentration problems, excessive anxiety, situational and social anxiety, and sleep disturbances.  *Id.*

Dr. Paris described Kelly's behavioral health restrictions and limitations as follows:

> Due to the severity, frequency, and intensity of her psychological symptoms, [Kelly] cannot start & complete tests similarly to others her age.  She has difficulty falling and staying asleep and feels tired all the time.  She is easily distracted and has difficulty completing tests.  She is depressed & has limited [illegible] & a low sense of self, which often results in her giving up on activities, requiring assistance, depending on others, and being indecisive.  She has a great deal of general, situational, and social anxiety.  She has difficulty being around others due to her anxiety, and her anxiety makes it difficult to concentrate when she is not at home or isolated.  Due to her psych. med. sx [symptoms], she is also irritable & has mood swings.  Based on the

5

aforementioned [symptoms], she would be unable to work a normal work week (40 hrs) without significant interference from her [symptoms].

(R. 10, PageID #: 1355.)

On June 18, 2015, Kimberly Sheets, D.O., provided a disability update to UNUM.  (R. 10, PageID #: 1339-1341.)  Dr. Sheets identified "seizure disorder" as the primary diagnosis that may impact Kelly's functional capacity.  *Id.* at 1339.  Dr. Sheets provided secondary diagnoses of cervical radiculopathy and lower back pain. *Id.* Dr. Sheets described Kelly's current physical restrictions as "cannot lift more than 10 pounds, stand more than 1/2 hour, or sit for more than 1 hour."  *Id.* at 1340. She indicated that there were no behavioral health restrictions.  *Id.*

At an August 4, 2015, medication review visit with psychiatrist Rakesh Ranjan, M.D., Kelly reported being tired all the time, and frustrated that she could not do the things she used to do, due to her chronic conditions.  (R. 10, PageID #: 1285.)  The claimant reported that fatigue caused her frustration, but she was coping well.  *Id.*  She meets with Dr. Paris every three weeks.  *Id.*  Kelly was seeing Dr. Karetti for pain management, on a decreased dose of oxycodone.  *Id.*

Dr. Ranjan indicated mild depressive symptoms, mild mood swings, mild irritability, and moderate anxiety.  (R. 10, PageID #: 1285.)  The doctor also noted mildly decreased energy.  *Id.*  Dr. Ranjan indicated no suicidal risk, and a cooperative demeanor.  *Id.* at 1286.  The doctor assessed that Kelly had a logical thought process, euthymic mood, full affect, and no cognitive impairment.  *Id.* at 1287.  Kelly had average intelligence, and was oriented to person, place and time,

6

with a normal memory and good insight.  *Id.*  Kelly reported no side effects to her medications.  *Id.* at 1288.

Dr. Ranjan also determined that Kelly's condition was improving, and she was compliant with her medications and her treatment.  (R. 10, PageID #: 1288.) Dr. Ranjan continued her current treatment plan.  *Id.* at 1289.

On September 1, 2015, Dr. Paris completed a medical opinion concerning claimant's mental ability to do work-related activities.  (R. 10, PageID #: 1332-1334.)  Dr. Paris rated Kelly "fair" in the majority of functioning categories, indicating that she had the ability to perform sustained work activity at least one-third, but less than two-thirds, of the workday.  *Id.* at 1332-1333.  The psychologist indicated that Kelly had a poor or no ability to deal with normal work stress.  *Id.* Dr. Paris estimated that Kelly's impairments or treatment would cause her to be absent from work three times per month, on average.  *Id.* at 1333-1334.


## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the November 10, 2015, decision:

> 1.  The claimant meets the insured status requirements of the Social Security Act (the "Act") through December 31, 2018.
>
> 2.  The claimant has not engaged in substantial gainful activity since January 8, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3.  The claimant has the following severe impairments: systemic lupus erythematous, benign brain tumor, seizure disorder, peripheral neuropathy, carpal tunnel syndrome/bilateral trigger fingers,

7

dysfunction of the elbows, right ankle, and right knee, spine disorder, migraine headaches, bipolar disorder, depression, and attention deficit disorder (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in  20 CFR 404.1567(b) except that the claimant may frequently push and/or pull, including foot controls, with the right lower extremity; the claimant may occasionally operate hand controls, with the bilateral upper extremities; the claimant may occasionally reach overhead with the left upper extremity and may frequently reach overhead with the right upper extremity; the claimant may frequently reach in all other directions bilaterally; the claimant may occasionally handle and finger with the bilateral upper extremities; the claimant may frequently balance, stoop, kneel, crawl, climb ramps and stairs, may occasionally crawl, but may never climb ladders, ropes or scaffolds; the claimant must avoid all exposure to workplace hazards, including unprotected heights, dangerous moving machinery and commercial driving; the claimant is limited to the performance of simple, routine, tasks, undertaken in a setting free of strict production quotas, which setting imposes no more than routine workplace changes; the claimant must be permitted two unscheduled breaks during the morning hours and two unscheduled breaks during the afternoon hours, each not to last more than ten minutes.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on April 16, 1964, and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

8

supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 8, 2013, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 10, PageID #: 69, 70, 82, 83.)


## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. §

9

404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520 (a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404. 1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a) (4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the

Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Kelly presents the following legal issues for the court's review:

I.  The ALJ committed legal error when he failed to properly evaluate Ms. Kelly's credibility and symptoms according to the Social Security rules and regulations including SSR 96-7p.

> A.  The ALJ's analysis of Ms. Kelly's activities of daily living was flawed because it was based on a selective review of the record and a mischaracterization of the evidence.

B.  The ALJ impermissibly discredited Ms. Kelly's
credibility by a misapplication and misunderstanding of
the psychological concept of "cognitive distortion."

II.  The ALJ committed legal error when he failed to properly evaluate
the medical evidence of record including the opinions of the treating
physician according to SSR 96-2p and 20 CFR 404.1527(d)(2).

(R. 12, PageID #: 1535-1536.)

A.  Evaluation of Credibility and Symptoms

Kelly argues that the ALJ committed legal error when evaluating her

credibility and symptoms according to Social Security regulations, including SSR

96-7p.  (R. 12, PageID #: 1547-1549.)  Miller asserts that the ALJ lacked substantial

evidence to support his credibility findings.  *Id.* at 1547.

The Sixth Circuit has established a two-part test to evaluate complaints of

disabling pain and other disabling symptoms when these symptoms (and not the

underlying condition itself) form a basis of the claimant's disability claim.  *Rogers v.*

*Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007).  First, the ALJ must determine

whether there is "an underlying medically determinable physical impairment that

could reasonably be expected to produce the claimant's symptoms."  *Id.* (*citing* 20

C.F.R. § 416.929(a)).  If the first test is satisfied, the ALJ must then evaluate "the

intensity, persistence, and limiting effects of the symptoms on the individual's

ability to do basic work activities."  *Id.*

Whenever a claimant's complaints regarding symptoms, or their intensity

and persistence, are not supported by objective medical evidence, the ALJ must

determine the claimant's credibility based on a consideration of the entire case

12

record.  *Rogers*, 486 F.3d at 247.  To the extent that the ALJ's findings are based on the credibility of the claimant, those findings are accorded great weight and deference.  *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).  Nevertheless, the ALJ's assessment of the claimant's credibility must be supported by substantial evidence. *Id.*

In addition, the ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility, but rather the ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record."  *Rogers*, 486 F.3d at 247-248.  SSR 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Rogers*, 486 F.3d at 248.

The Sixth Circuit has stated that "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability."  *Duncan v. Secretary, HHS*, 801 F.2d 847, 852-853 (6th Cir. 1986).  The ALJ considers a number of factors that may or may not corroborate the claimant's allegations of pain, including:  the claimant's daily activities; the frequency and intensity of the pain or other symptoms; the effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; and treatment, other than medication, the individual has received for

13

relief of pain or other symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529); *see also* Social Security Ruling 96-7p, 1996 WL 374186; 20 C.F.R. § 404.1529.

Kelly contends that the ALJ found that her medically determinable impairments could reasonably be expected to cause her alleged symptoms, however he found her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  (R. 12, PageID #: 1547; *see generally* R. 10, PageID #: 73, 76, 77.)  The claimant asserts that the ALJ rejected her claims of disabling fatigue and malaise, pain, and lack of concentration and memory because:

> (1) her activities of daily living strongly suggest that the claimant would
> be capable of engaging in work activity contemplated by the RFC (TR.
> 24-25); and (2) the claimant had a tendency to use cognitive distortions
> in her reporting (TR. 25).

(R. 12, PageID #: 1549, citing R. 10, PageID #: 77-78.)

The ALJ's decision stated that, after careful consideration of the evidence, Kelly's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (R. 10, PageID #: 73.) After recognizing Kelly was diagnosed with systemic lupus erythematous ("SLE"), the ALJ determined that Kelly's allegations—specifically that fatigue arising from SLE was preclusive of all types of work—were not supported by the medical record considered as a whole.  *Id.*  The ALJ relied upon physical examinations in the record that consistently showed minimal or normal findings, including normal

14

respiratory effort, with normal breathing sounds, a regular heart rate and rhythm, and normal strength and range of motion in the extremities.  (R. 10, PageID #: 73, citing PageID #: 386, 875, 833.)  In addition, the ALJ noted that Kelly's rheumatologist found her multiple orthopedic and radicular symptoms unrelated to her SLE.  *Id.*, citing R. 10, PageID #: 594.  Further, Kelly's symptoms have been controlled by prescription medications.  *Id.*, citing R. 10, PageID #: 264, 304, 678.

As to Kelly's benign brain tumor and seizure disorder, the ALJ found that the record considered as a whole confirms that these impairments would not be preclusive of all types of work.  (R. 10, PageID #: 73.)  The ALJ determined that Kelly had surgery for the removal of a benign cyst in June 2012, and that she was reported to be doing well after the surgery.  (R. 10, PageID #: 73, citing PageID #: 360, 347.)  Post-surgical examinations and imaging have not detected a recurrence of the cyst, and have resulted in minimal or normal findings.  (R. 10, PageID #: 73-74, citing record.)  The ALJ indicated that treatment for Kelly's headaches "dropped off precipitously" post-surgery, and Kelly denied ongoing headaches to her rheumatologist in 2014 and 2015.  (R. 10, at PageID #: 74, citing PageID #: 1053, 1041.)  The ALJ also noted that Kelly had reported, since her surgery, a single "blackout," lengthy intervals of no seizure activity, and no treatment for seizure.  *Id.*, citing R. 10, PageID #: 551, 1130, 1134, 1136.  In addition, prescription medications have been prescribed to control her symptoms.  *Id.*, citing R. 10, PageID #:  264, 289.

Moreover, the ALJ found that the record as a whole does not support Kelly's contention that her impairments of peripheral neuropathy, carpal tunnel syndrome and bilateral trigger fingers would be preclusive of all types of work. (R. 10, at PageID #: 74-75.)  For example, the ALJ indicated physical examinations in the record consistently reported either minimal or normal findings, such as normal strength, coordination, reflexes and sensations of the upper extremities. (R. 10, at PageID #: 75, citing PageID #: 551-552; *see also* PageID #: 1130, 1140.)  Similarly, the ALJ found that Kelly's medically determinable impairments of dysfunction of the elbows, right ankle, and right knee, spine disorder, migraine headaches, bipolar disorder, depression, and attention deficit disorder could reasonably be expected to cause the symptoms the claimant alleged, but her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible, and the allegations that these impairments were preclusive of all types of work were not supported by the medical record considered as a whole. (R. 10, PageID #: 75-77, citing relevant record evidence.)

The ALJ determined the evidence indicated that the limitations from Kelly's impairment symptoms were not as severe as she alleged.  The ALJ found that the RFC restrictions set forth in the decision provided adequate allowance for her impairments. (R. 10, PageID #: 76, 77.)

It is proper for an ALJ to consider a claimant's ability to conduct daily life activities, where there is a claim of disabling pain. *Warner v. Commissioner*, 375 F.3d 387, 392 (6th Cir. 2004) (citing *Walters*, 127 F.3d at 532); *see also* 20 C.F.R. §

16

404.1529(c)(3)(i); *Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007). Although the ability to do household chores is not direct evidence of an ability to do gainful work, the Sixth Circuit has found that an ALJ may consider such activities in evaluating a claimant's assertions of pain. *Keeton v. Commissioner*, No. 13-4360, 2014 WL 5151626, at *15 (6th Cir. Oct. 14, 2014) (quoting *Walters*, 127 F.3d at 532).

Here, the ALJ addressed Kelly's daily activities as follows:

> . . . [T]he claimant has reported the following daily activities: the ability to maintain an independent household, including dusting, sweeping, laundry, and meal preparation, the ability to attend to the care of a family pet, the ability to drive a car, shop in stores, manage her own appointments, medications and finances, the ability to socialize and "lunch" with friends, to take her grandson on outings, to attend church periodically, to read, garden, work puzzles, go to the library and chat with neighbors for pleasure (4E), (12F/5), (20F/3), (32F/3). In short, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. While none of these activities, considered in isolation, would warrant or direct a finding of "not disabled"; when considered in combination, they strongly suggest that the claimant would be capable of engaging in work activity contemplated by the residual functional capacity.

(R. 10, PageID #: 77-78.)

Kelly contends that the ALJ mischaracterized her daily activities by overlooking her testimony that she had good days and bad days due to the variable nature of her lupus, bipolar disorder, fatigue and pain. (R. 12, PageID #: 1550.) She argues that the ALJ failed to consider the duration, quality and frequency of the activities addressed. *Id.* Kelly supplies a chart which she contends supports her interpretation of events. *Id.* at PageID #: 1550-1554.

17

But it is not this court's role to resolve conflicts in the evidence, or to decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387.  "Merely marshalling evidence to suggest that [claimant] is disabled, however, is insufficient; to prevail on appeal, [the claimant] must demonstrate that the ALJ's determination that [claimant] was not disabled is not supported by substantial evidence."  *Peterson v. Commissioner*, No. 13-5841, 2014 WL 223655, at *7 (6th Cir. Jan. 21, 2014).  The ALJ's decision must stand if it is supported by substantial evidence, regardless of whether this court would resolve issues of fact differently, or substantial evidence might support an opposite conclusion.  *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

The ALJ properly considered Kelly's ability to perform day-to-day activities as one factor in determining whether her testimony was credible.  *See, e.g.*, *Temples v. Commissioner*, No. 12-5816, 2013 WL 600218, at *2 (6th Cir. Feb. 15, 2013) (citing *Walters*, 127 F.3d at 532).  In addition, the ALJ's decision sets forth an extended discussion of the medical record concerning Kelly's symptoms and treatment for symptoms of pain, fatigue and other impairments.  (R. 10, PageID #: 73-78.)  The ALJ's decision discusses the evidence concerning the Section 404.1529 factors through a narrative description that extends over several pages.  *Id.*; *see generally* 20 C.F.R. § 404.1529.

The court finds that the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence.  The ALJ identified specific facts supported by the record that cast doubt on the severity of the disabilities alleged by

18

Kelly. (R. 10, PageID #: 73-78.)  Because "a reasonable mind might accept [the evidence] as adequate to support" the ALJ's credibility determination, the court concludes that substantial evidence supports the ALJ's finding. *Norris v. Commissioner*, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing *Rogers*, 486 F.3d at 241).

## B.  Cognitive Distortions

The claimant also contends that the ALJ impermissibly relied on her therapist's reference that Kelly utilizes "cognitive distortion," to conclude that the information Kelly provided may not be reliable and credible. (R. 12, PageID #: 1554, citing PageID #: 78-79.)  The psychological phrase "cognitive distortions," indicates "thinking errors," or irrational thought patterns, within the mind of the patient, rather than misrepresentations or untruthful assertions to others. [2]  *See,*

---

[2]  *See* Katerina Rnic, David J. A. Dozois, and Rod A. Martina, Cognitive Distortions, Humor Styles, and Depression Eur J Psychol. 12(3): 348 (2016) (internal citation omitted):

> Cognitive distortions are negatively biased errors in thinking that are purported to increase vulnerability to depression.  Individuals experience automatic thoughts in response to events, which in turn lead to emotional and behavioral responses.  The content of automatic thoughts is typically consistent with an individual's core beliefs about important aspects of themselves, others, and the world.  When negative core beliefs are activated and negative automatic thoughts elicited (comprised of errors in reasoning that are not evidence-based) a negative, neutral or even positive event may influence negative affect and maladaptive behaviours. Overtime, this sequence among thoughts, emotions and behaviours can cause or maintain symptoms of depression.

*e.g.*, *United States v. Caporale*, 701 F.3d 128, 139 (4th Cir. 2012) ("cognitive distortions or 'thinking errors'"); *United States v. Zastoupil*, No. 05-2821, 2007 WL 1342659, at *1 (8th Cir. May 9, 2007) (per curiam) ("cognitive distortions and irrational thought patterns"). Kelly asserts that the ALJ's conclusion is based on a misunderstanding of this psychological concept. *Id.* The court finds claimant's argument misplaced, as substantial evidence supports the ALJ's credibility determination.

The pertinent portion of the ALJ's decision stated that Kelly had "a seeming preoccupation with obtaining disability benefits." (R. 10, PageID #: 78, citing PageID #: 1214.) As support for this observation, the ALJ referenced the comments from claimant's therapist, who stated that Kelly's

> . . . problem is that she does not want to return to her old job (and probably cannot with her physical limitations) but needs a source of income to support independent living. Her solution to this problem is to be disabled.

(R. 10, PageID #: 799 (notes of Feb. 11, 2014, visit), cited at PageID #: 78.)

Further, the relevant portion of the therapist's August 31, 2015, notes cited by the ALJ, reads as follows:

> Focused on thoughts/feelings related to disability hearing this Wednesday.
>
> * * * * *
>
> She will try to look at hearing positively since she has a tendency to utilize cognitive distortions. She reported anxiety related to the

20

> hearing + rehearsal/ role plays w/ mother recently to help reduce
> overall anxiety/ situational anxiety.

(R. 10, PageID #: 1214.)  The therapist's notes indicate that Kelly was "focused" on

the disability hearing, feeling anxiety and negative about her upcoming hearing,

and that she was attempting to reduce her situational anxiety concerning the

hearing.

While the Commissioner argues that the ALJ "never stated that Plaintiff was

untruthful or malingering," the portion of the decision under discussion implies that

Kelly's information may be unreliable (or distorted) because her aim was to support

herself through an award of disability benefits.  Nevertheless, even discounting the

reference to "cognitive distortions," which merely consisted of a few lines in a

lengthy and well-supported decision, the court finds that the ALJ's credibility

determinations overall are reasonable, specific, and supported by substantial

evidence.  As discussed earlier, the ALJ identified specific facts supported by the

record that cast doubt on the severity of the disabilities alleged by Kelly.  (R. 10,

PageID #: 73-78.)  The court concludes that substantial evidence supports the ALJ's

finding.  *Norris*, 2012 WL 372986, at *5 (citing *Rogers*, 486 F.3d at 241).

### C.  Treating Physician

It is well-recognized that an ALJ must generally give greater deference to the

opinions of a claimant's treating physicians than to non-treating physicians.[3]

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into
effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence
for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017).

21

*Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-suited to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make

---

Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect.  For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

22

clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p). The obligation to provide good reasons permits meaningful and efficient review of the ALJ's application of the treating physician rule. *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011).

Kelly contends that the ALJ committed legal error when evaluating her treating psychologist's opinions, pursuant to SSR 96-2p and 20 CFR 404.1527(d)(2). (R. 12, PageID #: 1557-1559.) Dr. Paris, claimant's treating clinical psychologist, provided a disability update to claimant's insurance company UNUM in October 2014, which identified bipolar disorder as the primary diagnosis that may impact Kelly's functional capacity, with a secondary diagnosis of generalized anxiety disorder, and attention deficit disorder. (R. 10, PageID #: 1354.) The psychologist indicated that Kelly's depression, fatigue, and her general, situational, and social anxiety, would render her unable to work a normal workweek without significant interference from her symptoms. *Id.* at 1355.

In September 2015, Dr. Paris completed a medical opinion concerning Kelly's mental ability to do work-related activities. (R. 10, PageID #: 1332-1334.) Dr. Paris rated Kelly "fair" in the majority of the categories of functioning, indicating that she had the ability to perform sustained work activity at least one-third, but less than two-thirds, of the workday. *Id.* at 1332-1333. The doctor rated as "poor or none" her ability to deal with semiskilled and skilled work stress. *Id.*

23

Dr. Paris estimated that Kelly would be absent from work three times per month, on average.  *Id.* at 1333-1334.

> The ALJ's opinion summarized those two opinions, and determined:
>
> Dr. Paris has treated the claimant and was reporting within the bounds of his professional certifications and specialty.  However, his opinion is not consistent with the broader "psychological record," or with claimant's apparently normal social routine, which includes indications that the claimant socializes regularly, "lunches" with friends, takes her grandson on outings (4E), (32F/3), (20F/3).  No controlling weight; rather, little weight was accorded these opinions.

(R. 10, PageID #: 81.)

The claimant argues that the ALJ's opinion failed to meet the specificity requirements of *Wilson*, was not based on the record as a whole, and was based on a selective and erroneous reading of the evidence.  (R. 12, PageID #: 1557.)  Kelly further asserts that the ALJ identified "the fact that there were numerous psychological opinions of record but failed to specify how Dr. Paris's opinions were inconsistent with other substantial evidence in the administrative record."  *Id.*  The Commissioner points out that the ALJ utilized the phrase "psychological record" as shorthand to refer to "the number of opinions of function included in the evidence, the composite factors of clinical examinations, activities of daily living, credibility and reporting deficits," that would be collectively referred to as the "psychological record."  (R. 13, PageID #: 1604-1605, citing R. 10, PageID #: 79.).

The ALJ discussed Kelly's psychological disorders and pertinent treatment records earlier in the opinion, noting that mental status examinations had "consistently albeit not universally reported either minimal or normal findings."

24

*See* R. 10, PageID #: 77, citing PageID #: 634-635, 761-762, 1318-1319.  *See*

*generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir.

Sept. 2, 2106) (although ALJ did not reproduce list of treatment records when she

explained why doctor's opinion was inconsistent with the record, it suffices that she

listed them elsewhere in her opinion);  *Hernandez v. Commissioner*, No. 15-1875,

2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016) (although ALJ did not specifically

identify previously discussed objective medical evidence, it is clear which evidence

he was referring to).  Kelly has been prescribed psychotropic medications that "are

effective in controlling her symptoms."  R. 10, PageID #: 77, citing PageID #: 289,

304, 633.  The ALJ determined that "the evidence would indicate that the symptom

limitations relevant to these [psychological] impairments are not as severe as

alleged," and the restrictions set forth in the RFC would provide adequate

allowance for her impairments.  *Id.*

 In assessing the weight given to the opinions of Dr. Paris, the ALJ considered

the length of the treatment relationship and the frequency of examination (R. 10,

PageID #: 81, citing treatment records from 2013 through 2015 (32F; 20F)); the

nature and extent of the treatment relationship (*id.;* treated the claimant and was

reporting within the bounds of his specialty); the supportability of the opinion and

the consistency of the opinion with the record as a whole (*id.;* opinion is not

consistent with the "psychological record," or with claimant's normal social routine);

and the specialization of the source (*id.).  See generally Gayheart*, 710 F.3d at 376;

*Cole*, 661 F.3d at 937.  While the ALJ is directed to consider these factors, the ALJ

is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

In addition, an ALJ may give more weight to the opinions of examining or consultative sources where the ALJ finds the treating physician's opinion is not well-supported by the objective medical records. *Dyer v. Social Sec. Admin.*, No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014) (citing *Gayheart*, 710 F.3d at 376, 379-380). The ALJ assigned "some weight" to the opinions of two state agency consultants, Karla Voyten, Ph.D., and Courtney Zeune, Ph.D., after determining their opinion evidence supported a finding that Kelly could perform simple, routine tasks in a setting with no strict time or production requirements, involving a static job process with changes easily explained. (R. 10, PageID #: 79.) The ALJ determined that the opinion evidence he cited was consistent with the evidence of record, which showed that Kelly's memory function or attention has often, "even typically," been reported as normal. *Id.* Moreover, the ALJ stated that the cited opinions were consistent with "claimant's array of activities of daily living." *Id.*

The ALJ also assigned "some weight" to the opinion of the consultative psychological examiner, James Sunbury, Ph.D. (R. 10, PageID #: 81.). Dr. Sunbury indicated "that the claimant could understand, remember and carry out instructions as well as others who could manage their finances, that she was below average in maintaining concentration, persistence and pace, that she would have no limitations relating to others and only mild limitations withstanding the stressors

26

of day-to-day work." *Id.*  Dr. Sunbury's opinion, as the ALJ noted, was based on a single examination, but was "consistent with the broader 'psychological record.'"  *Id.*

These opinions further bolster the ALJ's determination that Dr. Paris' opinion is not consistent with the "psychological record."  In sum, the court rejects Kelly's argument that the ALJ's decision violated the treating physician rule when assigning Dr. Paris' opinion "little weight."  The ALJ determined that Dr. Paris' opinion was inconsistent with other substantial evidence in the medical record, and identified the evidence on which that determination was based.  (R. 10, PageID #: 79, 81.)  *See generally* 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376.)  The ALJ's good reasons for the weight assigned to Dr. Paris' opinion were supported by substantial evidence in the record.  The court finds they are sufficiently specific to make clear the weight assigned to the treating physician's opinion, and the reasons for that weight.  (R. 10, PageID #: 79, 81.)  *See Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.

The court, therefore, finds that the ALJ's decision concerning the weight given to Dr. Paris' opinion is supported by good reasons and by substantial evidence in the record.

## VIII.  CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's final

decision be AFFIRMED.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:   June 4, 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the
Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file
objections within the specified time WAIVES the right to appeal the Magistrate
Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United
States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).